IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

         No. CV 06-1337-MO

         Plaintiff,

WANDA J. WOJNOWSKI

         Plaintiff-Intervenor,

         OPINION AND ORDER

    v.

CON-WAY, Inc., formerly CNF Inc.;
MENLO WORLDWIDE TECHNOLOGIES, LLC;
MENLO LOGISTICS, Inc., and dba
MENLO WORLDWIDE LOGISTICS,

         Defendants.

**MOSMAN, J.,**

      Before the court is defendants' motion to dismiss Con-Way, Inc. and Menlo Logistics,

Inc. as parties to this action (#23).  Defendants filed a concise statement of material facts,

declarations, and exhibits, and, as such, the parties are treating the motion as one for summary

judgment in accordance with Fed. R. Civ. P. 12(b).  For the reasons stated below, the court

GRANTS defendants' motion.

  PAGE 1 - OPINION AND ORDER

BACKGROUND

The defendants in this case are affiliated.  Con-Way, Inc. is a holding company whose subsidiary, Menlo Worldwide, LLC, owns both Menlo Logistics, Inc. and Menlo Worldwide Technologies, LLC ("MWT").  At one time or another, plaintiff-intervenor Wanda Wojnowski worked for each of the defendants.  She began working for Con-Way, formerly known as Consolidated Freightways and CNF, in 1994.  In 1998, she was working for Menlo Logistics and then switched to MWT in November 2002.  She was laid off in February 2004.  Eight months later, Ms. Wojnowski filed a complaint with the Oregon Bureau of Labor and Industries ("BOLI"), alleging, among other things, sex and age discrimination.  The case was transferred to the Equal Employment Opportunity Commission ("EEOC"), which filed this action alleging that Con-Way, Menlo Logistics, and MWT discriminated against Ms. Wojnowski on the basis of her sex and age in violation of Title VII and the Age Discrimination in Employment Act ("ADEA").  Ms. Wojnowksi intervened in the Title VII claim, and defendants filed a motion to dismiss.  In their motion, defendants argue there is insufficient evidence to establish that Con-Way, Menlo Logistics, and MWT should be considered a single employer for these violations.  Additionally, they argue any claims against Menlo Logistics are time barred.

STANDARD OF REVIEW

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court views the record in a light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  If the movant initially shows that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings but must respond with evidence setting "forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

PAGE 2 - OPINION AND ORDER

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotations marks and citation omitted).

In this case, defendants seek dismissal of Con-Way and Menlo Logistics on the contention that Ms. Wojnowski was employed by MWT at the time of the alleged employment violations. They argue there is insufficient evidence to show that Con-Way, Menlo Logistics, and MWT should be considered a single employer for these violations. Showing a defendant was the employer is a required element of both Title VII and the ADEA. 42 U.S.C. § 2000e-2; 29 U.S.C. § 623. Thus, the specific standard of review applicable here is whether, in the light most favorable to plaintiffs, there is sufficient evidence by which a rational trier of fact could find that the defendants were a single employer during the relevant time period.

ANALYSIS

Businesses are allowed to incorporate and thereby isolate liabilities among separate entities. *Cascade Energy & Metals Corp. v. Banks,* 896 F.2d 1557, 1576 (10th Cir. 1990). This concept of limited liability creates a strong presumption that a parent or affiliated company is not liable for the employment violations of its subsidiary or affiliate; that is, that the parent or sister corporation is not the "employer" for Title VII or ADEA purposes. *See Watson v. Gulf & W. Indus.,* 650 F.2d 990, 993 (9th Cir. 1981). This strong presumption may be overcome if plaintiff can show special circumstances exist. *Id.* There are a variety of tests in the case law for determining when special circumstances exist. The seminal case, for our purposes, is *Radio & Television Broadcasting Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc.,* 380 U.S. 255, 256 (1965); *see also NLRB v. Don Burgess Construction Corporation,* 596 F.2d 378, 384 (9th Cir. 1979) (adopting *Radio Union* in the context of the National Labor Relations Act). *Radio Union* examines four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. *Don Burgess*, 596 F.2d at 384. The factors themselves are given varying degrees of weight, although particular attention is given to the first three factors. *Id.* And some Ninth Circuit cases place special emphasis on the

PAGE 3 - OPINION AND ORDER

third factor. *See, e.g., J.M. Tanaka Constr., Inc. v. NLRB,* 675 F.2d 1029, 1034 (9th Cir. 1982) ("The most important single factor is centralized control of labor relations.").

At oral argument, there was some discussion of what, exactly, plaintiffs must show in order to defeat summary judgment. It seems clear that once defendants have shown separate incorporation, plaintiffs have some obligation to put forward facts that would show defendants to be a single employer; that is, facts that meet some or all of the *Radio Union* factors. At the summary judgment stage, plaintiffs are entitled to have those facts viewed in the light most favorable to them. So, for example, if plaintiffs adduce facts tending to show that Con-Way officers requested MWT officers to fire Ms.Wojnowski, and defendants merely dispute that showing, plaintiffs will likely have satisfied, at a minimum, factor three of *Radio Union.* But the analytical wrinkle is that the *Radio Union* factors, generally speaking, must be present to an uncommon degree. It is not enough for plaintiffs merely to show some interrelation among the corporate entities; "[t]he appropriate standard is whether, upon review of the circumstances of the intercorporate relationship, [the defendant corporations] exercise[] a degree of control that exceeds the control normally exercised by a parent corporation which is separate and distinct from the subsidiary." *Armbruster v. Quinn,* 711 F.2d 1332, 1338 (6th Cir. 1983). I take this principle to mean, for example, that when attempting to make their showing as to interrelation of operations or common management, plaintiffs must bring forward some evidence that the factor is present to an unusual degree, and not merely show that it exists at all.

Simply asserting that Con-Way and MWT have some managers in common, without any showing that the degree of commonality goes beyond that "normally exercised by a parent corporation" is not enough. Otherwise, in practically every case involving a parent and a subsidiary, all a plaintiff would have to do to bring the parent into the case is allege the kind of connections among parents and subsidiaries that almost always exist. This would be inconsistent with the strong presumption of separateness mentioned above. It is, of course, not plaintiffs' burden at summary judgment actually to prevail on this question of inter-corporate connection.

PAGE 4 - OPINION AND ORDER

But they must at least raise questions of fact that go to the actual issue they face–uncommon interconnection.

It is also important to note that this showing of inter-corporate connection has a point. It is designed to show that either Con-Way or Menlo Logistics was involved in some way in the employment relationship between Ms. Wojnowski and MWT. Facts that show some corporate connection unrelated to the employment relationship have much less significance than facts that tend to show control over employment decisions.

With this in mind, I will now proceed to analyze the *Radio Union* factors as they apply to this case.

A.    Interrelation of Operations

Evidence of interrelated operations can include common offices, long distance shipping, bank accounts, payroll preparation, and shared facilities. *See NLRB v. Transcon. Theaters Inc.*, 568 F.2d 125, 129-30 (9th Cir. 1978). Here, plaintiffs argue defendants should be considered a single employer because (1) Con-Way, the parent corporation, filed consolidated financial statements with the Securities and Exchange Commission and consolidated tax returns with the IRS, and (2) Con-Way, Menlo Logistics, and MWT share administrative and technical services, including payroll and technical support, which are all housed at the same facility. I begin with the former.

1.    Consolidated Financial Statements and Tax Returns

Defendants contend such filings cannot support a single employer finding because the consolidated filings are either required or permitted by law. Neither the Ninth nor any other Circuit has held that consolidated filings, either financial statements or tax returns, establish interrelatedness sufficient for single employer liability. Several district courts have addressed the issue. For example, in *Rittmeyer v. Advance Bancorp, Inc.*, 868 F. Supp. 1017, 1022 (N.D. Ill. 1994), the plaintiff contended the defendants' consolidated financial statements filed with the Federal Reserve established the required amount of interrelation for single employer status

between the parent company and its two subsidiaries.  The defendants argued the consolidated statements were required by law and, therefore, cannot show the requisite degree of interrelatedness.  *Id.*  The court agreed.  *Id.*  It found the filing of consolidated financial statements simply proved the defendant parent company could follow the law.  *Id.*; *see also Hamilton v. Brad Sys., Inc.*, 2006 WL 2522560, at *11 (D. Kan. 2006) (unpublished (consolidated financial statements establish nothing more than the standard parent-subsidiary relationship because such statements are required by generally accepted accounting principles); *Bass v. Lifecare Holdings, Inc.*, 2000 WL 377815, at *5 (E.D. La. 2000) (unpublished) (consolidated tax returns and financial statements did not establish interrelatedness beyond the ordinary perquisites of a holding company); *Clark v. St. Joseph's/Candler Health Sys. Inc.*, 2006 WL 2228929, at *6 (S.D. Ga. 2006) (unpublished) (single employer finding cannot be supported by interrelation required by government regulation).

Other district courts have used consolidated financial statements to help support a finding of interrelation of operations.  But, these courts did not find sufficient interrelatedness to support a finding of single employer liability based on the consolidated financial statements alone.  *See Story v. VAE Nortrak, Inc.*, 214 F. Supp. 2d 1209, 1211 (N.D. Ala. 2001) (listing consolidated financial statements as one of 11 reasons for finding single employer status); *Brown v. Vitelcom, Inc.*, 47 F. Supp. 2d 595, 601 (D. V.I. 1999) (other indicia of interrelatedness included common data processing, billing, hardware supply, and public relations); *Johnson v. Spencer Press of Maine, Inc.*, 2003 WL 169751, at *4 (D. Me. 2003) (unpublished) (listing consolidated financial statements as one of many reasons to support a finding of interrelatedness);

As applied to this case, I find the reasoning of *Rittmeyer* and the similar line of cases cited above persuasive.  While I consider defendants' consolidated financial statements and tax filings as part of my overall analysis under *Radio Union*, I give them little weight because such filings are either required by law or encouraged by generally accepted accounting principles. Moreover, they are typically associated with parent-subsidiary relationships, and the EEOC and

PAGE 6 - OPINION AND ORDER

Ms. Wojnowski failed to raise a question of fact showing the filings at issue establish an unusual amount of interconnection.

           2.         Shared Services/Facilities

The EEOC and Ms. Wojnowski also contend that defendants are interrelated because they: (1) participate in a common pension/benefits plan; (2) share offices and other equipment; (3) use a common payroll service; and (4) use a single telephone directory, email system, and news bulletin system for all employees falling under the Con-Way umbrella. Defendants contend the shared services and facilities evidence nothing more than a typical parent-subsidiary relationship.

It is common for parent companies and their subsidiaries to have common pension and benefits plans in order to achieve certain economic efficiencies, and courts have held this type of action is not evidence of single employer status. *See, e.g.*, *Engelhardt v. S.P. Richards Co.*, 472 F.3d 1, 8 (1st Cir. 2006); *Papa v. Katy Indus., Inc.*,166 F.3d 937, 942 (7th Cir. 1999); *Balut v. Loral Elec. Sys.*, 988 F. Supp. 339 (S.D.N.Y. 1997). To raise an issue of single employer status, a plaintiff must show that such plans have permitted the parent company to exert some form of centralized control over its subsidiaries' labor relations. *Id.* Here, common pension and benefits plans exist, but I give them little weight in my analysis because the EEOC and Ms. Wojnowski failed to raise any issue of fact showing that these plans have permitted Con-Way to exert centralized control over Menlo Logistics or MWT.

The defendants also share office space and other technical equipment such as computer servers at the Adtech Center in Portland, Oregon. Such mutually convenient arrangements are typical of parent-subsidiary relationships, so long as the subsidiary pays its proportionate share of the shared facilities and equipment. *See Hukill v. Auto Care Inc.*, 192 F.3d 437, 443-44 (4th Cir. 1999); *W. Union Corp.*, 224 N.L.R.B. 274, 277 (1976); *Int'l Union of Operating Eng'rs Local 428*, 169 N.L.R.B. 184, 185 (1968). Here, there is nothing uncommon about defendants' use of the shared facilities and equipment. Both Menlo Logistics and MWT each pay its proportional

share for its use of the offices and equipment at the Adtech Center. Accordingly, I give little weight to defendants' use of such facilities and equipment.

Similarly, shared payroll and other administrative services are typical of parent-subsidiary relationships so long as the subsidiary pays for those services. *See, e.g., Armbruster*, 711 F.2d at 1337. Courts look for evidence of an arms-length relationship between the parent company and the subsidiary. *Id.* This type of relationship prohibits the parent's centralized control over the subsidiary. *See id.* Here, defendants do use the same payroll processing service, but Menlo Logistics and MWT pay for their respective costs. As such, I give little or no weight to defendants' shared use of payroll and other administrative services in my analysis.

Finally, I give no weight to defendants' use of a single telephone directory, email system, and news bulletin system. The EEOC and Ms. Wojnowski have failed to raise any question of fact as to how defendants' use of these communication means establishes an uncommon degree of interrelatedness between Con-Way, Menlo Logistics, and MWT.

B.    Common Management

Under this factor, the court examines whether the entities have common officers, directors, and managers. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1364 (10th Cir. 1993); *Baker v. Stuart Broad. Co.,* 560 F.2d 389, 392 (9th Cir. 1977). Here, there are at least five individuals who held dual management roles in two of the three entities during the time frame at issue. John Williford was Senior Vice President for Con-Way, Chairman of the Board for Menlo Logistics, and Chairman of the Board for MWT. Eberhard G. Scholler was Senior Vice President, General Counsel, and Secretary for Con-Way, and Assistant Secretary for both Menlo Logistics and MWT. Mark Thickpenny was Vice President and Treasurer for Con-Way and Assistant Treasurer for MWT. Jennifer W. Pileggi was Secretary for both Menlo Logistics and MWT.

The EEOC and Ms. Wojnowski argue this mere overlap in management by itself sufficiently establishes common management between the defendants. While such an overlap may establish some form of "common management," it is not the form of common management

required for purposes of this analysis.  Under *Radio Union*, the court looks to whether the common officers or managers exert regular control, i.e. day-to-day, over the operations of both entities.  *See, e.g.*, *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933-34 (11th Cir. 1987); *Baker*, 560 F.2d 389, 392; *Herman v. Blockbuster Entm't Group*, 18 F. Supp. 2d 304, 312-13 (S.D.N.Y. 1998); *Berkowitz v. Allied Stores of Penn-Ohio, Inc.*, 541 F. Supp. 1209, 1213-14 (E.D. Pa. 1982).  As the district court in *Herman* explained, the court is looking for evidence that the common officers or managers "wore the two companies' hats interchangeably" during their dual service.  18 F. Supp. 2d at 313.

Here, the EEOC and Ms. Wojnowski presented no such evidence.  They simply provided a list of names with their corresponding titles, indicating dual management roles, and an organizational flow chart.  That list and flow chart do not, by themselves, raise a genuine issue of fact regarding the common managers' exertion of regular control over the entities in which they had dual roles.  When asked at oral argument for additional evidence concerning the common officers or managers dual roles, plaintiffs could provide none.  Accordingly, I give little weight to the presence of common management between defendants' in this case.

C.    Centralized Control of Labor Relations

Whether the parent company controls labor relations of its subsidiaries is widely regarded as the most important factor under *Radio Union*.  *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).  Under this factor, a plaintiff must show the parent company exercised actual and active control of its subsidiary's day-to-day labor practices.  *Watson*, 650 F.2d at 993; *Transcon. Theaters Inc.*, 568 F.2d at 129.  In other words, a plaintiff must present evidence that the parent company directly interfered with its subsidiary's hiring, firing, and other employment practices.  *Armbruster*, 711 F.2d at 1338-39.

Here, the EEOC and Ms. Wojnowski offer no such evidence.  Instead, they argue Con-Way exerted day-to-day control over labor relations through its subsidiaries' use of company-wide software programs for payroll, benefits, and finances, and through its board of directors

PAGE 9 - OPINION AND ORDER

oversight of general personnel issues. Plaintiffs, however, failed to explain how such evidence shows that Con-Way directly interfered with MWT's hiring, firing, and other employment practices and have offered no other evidence of centralized control over labor relations. As explained above, common benefits and pension plans are typical of a parent-subsidiary relationship, and MWT reimburses Con-Way for its use of payroll, shared facilities, and other programs. As such, I give almost no weight to this factor.

      D.    <u>Common Ownership</u>

Common ownership standing alone is insufficient to establish single employer liability. *Frank*, 3 F.3d at 1364. It is nevertheless relevant to the court's consideration. *See id.* Here, common ownership is undisputed. Con-Way owns Menlo Worldwide, who in turn owns both Menlo Logistics and MWT. While this fact, by itself, is not controlling, it is relevant, and I give it proper consideration.

At this juncture, I note the EEOC and Ms. Wojnowski have entirely focused on the relationship between Con-Way and MWT to establish a single employer finding. They have offered no evidence and no law to support a single employer finding between MWT and its sister subsidiary Menlo Logistics. Even when asked at oral argument, they could provide none. As such, I find, considering all *Radio Union* factors and drawing all inferences in a light most favorable to the EEOC and Ms. Wojnowski, that plaintiffs have failed to raise a genuine issue of fact that the degree of commonality between defendants exceeds the typical parent-subsidiary relationship. Because I have so found, I need not address defendants' statute of limitations argument.

Defendants' motion to dismiss (#23) is GRANTED.

IT IS SO ORDERED.

DATED this <u> 4th </u> day of September, 2007.

                          <u>/s/ Michael W. Mosman              </u>
                          MICHAEL W. MOSMAN
                          United States District Court

PAGE 10 - OPINION AND ORDER